UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| KAREN RENEE BRYANT, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-00115-SKL |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| *Defendant*. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Karen Bryant ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits ("DIB"). Each party has moved for judgment [Doc. 11 & Doc. 14] and filed supporting briefs [Doc. 12 & Doc. 15]. For the reasons stated below: (1) Plaintiff's motion for summary judgment [Doc. 11] will be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 14] will be **GRANTED**; and (3) the decision of the Commissioner will be **AFFIRMED**.

I.  ADMINISTRATIVE PROCEEDINGS

According to the administrative record [Doc. 6 ("Tr.")], Plaintiff filed her application for DIB on September 25, 2018, alleging disability beginning June 13, 2018. Plaintiff's claims were denied initially and on reconsideration at the agency level. Plaintiff initially requested a hearing before an administrative law judge ("ALJ"), but two days later, she submitted a form waiving her right to a hearing and requesting that her case be decided on the written evidence (Tr. 109). On November 1, 2019, the ALJ found Plaintiff was not under a disability as defined in the Social Security Act at any time from the alleged onset date through the date Plaintiff was last insured for

disability eligibility purposes, which the ALJ determined was September 30, 2018. Plaintiff sought administrative review of the ALJ's November 2019 decision. On September 24, 2020, the Appeals Council issued an order finding the ALJ erred in calculating Plaintiff's date last insured. The Appeals Council found the correct date last insured was September 30, 2019 (not 2018), and it remanded Plaintiff's claim for further administrative proceedings before the ALJ. The ALJ was instructed to "[g]ive further consideration to the claimant's application for a period of disability and disability insurance benefits for the entire period at issue." (Tr. 94).

On remand, Plaintiff exercised her right to an administrative hearing, which was conducted by telephone on February 10, 2021. On April 8, 2021, the ALJ issued a second decision finding Plaintiff was not under a disability at any time between her alleged onset date (June 13, 2018) and the corrected date last insured (September 30, 2019). The Appeals Council denied Plaintiff's request for review of the ALJ's April 2021 decision, making the ALJ's April 2021[1] decision the final decision of the Commissioner. Plaintiff timely filed the instant action.

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

Plaintiff was born September 12, 1965, making her 54 years old on the date last insured, which is considered a "person closely approaching advanced age." 20 C.F.R. § 404.1563(d). She has at least a high school education and is able to communicate in English. She has past relevant work as a waitress, construction site laborer, certified nursing assistant, and metal finisher. In the Dictionary of Occupational Titles ("DOT"), all of these occupations are considered semi-skilled. The waitress and metal finisher occupations are generally performed at the light exertional level.

---

[1] All remaining references to the ALJ's decision will be to the April 2021 decision.

The CNA position is performed at the medium exertional level, and the laborer occupation is performed at the heavy exertional level.

B. **Medical Records**

In her September 2018 Disability Report, Plaintiff alleged disability due to "back surgery," "epidural injection," and "nerve block injection." (Tr. 231). While there is no need to summarize all of the medical records herein, the relevant records have been reviewed.

C. **Hearing Testimony**

At the telephonic hearing held February 10, 2021, Plaintiff and a vocational expert ("VE") testified. Plaintiff was represented by counsel at the hearing. The Court has carefully reviewed the transcript of the hearing (Tr. 32-50).

III. **ELIGIBILITY AND THE ALJ'S FINDINGS**

A. **Eligibility**

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration ("SSA")

determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of their impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (citations omitted).

B. The ALJ's Findings

The ALJ found Plaintiff met the insured status requirements through September 30, 2019, as instructed to by the Appeals Council. At step one of the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability date, January 5, 2018. At step two, the ALJ found Plaintiff had osteoarthritis/degenerative disc disease of the lumbar spine with radiculopathy, and that the condition constituted a severe impairment. The ALJ found Plaintiff had medically determinable impairments of depression and alcohol abuse

4

disorder (in remission), but that these impairments were non-severe. Finally, the ALJ found Plaintiff's history of a cerebrovascular accident was not a medically determinable impairment.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following additional restrictions:

- She can never climb ladders, ropes, or scaffolds.
- She can perform all other postural activities only occasionally.
- She cannot have concentrated exposure to extreme temperatures or hazards.

(Tr. 21).

At step four, the ALJ found Plaintiff was capable of performing her past relevant work as a waitress, as jobs in that occupation are generally performed (Tr. 26). The ALJ noted this finding was "supported by the testimony of the vocational expert, who testified that an individual with the claimant's age, education, work experience, and residual functional capacity would be able to perform the requirements of this job." (Tr. 26).

These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Social Security Act at any time between the alleged onset of disability date (June 13, 2018), and the date last insured (September 30, 2019) (Tr. 26).

IV.     ANALYSIS

Plaintiff argues the ALJ's decision should be reversed and remanded for further administrative proceedings, "including but not limited to a *de novo* hearing and a new decision."

[Doc. 12 at Page ID # 660]. She contends the ALJ's RFC determination "is unsupported by substantial evidence as she failed to properly evaluate the opinion of treating medical source Jay Jolley, M.D." [*Id.* at Page ID # 647].

As a preliminary matter, the headings in Plaintiff's brief refer to the ALJ's "**mental** RFC determination" [*id.* at Page ID # 647 & 655 (emphasis added)]. As the Commissioner notes, Plaintiff's challenge to the ALJ's assessment of her physical RFC is based entirely on her argument that the ALJ erred in his assessment of Dr. Jolley's opinion. Dr. Jolley is an orthopedic surgeon, and he completed the disputed opinion on a form titled, "Medical Source Statement (**Physical**)" (Tr. 595 (emphasis added)). The opinion primarily addresses Plaintiff's physical issues. The only arguable reference to mental functioning is a series of three questions related to whether Plaintiff's "abilities of concentration or focus" are "adversely affected by pain, medications side effects, fatigue or other reasons" (Tr. 596). Dr. Jolley checked a box indicating yes, Plaintiff's abilities of concentration or focus were affected, and in response to additional questions, he wrote that Plaintiff would need 60 minutes of rest "twice daily." (Tr. 596). Plaintiff does not specifically reference this aspect of Dr. Jolley's opinion in her brief, nor does she address any other evidence pertaining to her mental RFC.

Accordingly, it appears Plaintiff does not challenge the ALJ's assessment of her mental RFC and that the references to "mental" RFC in her brief are not intentional. If Plaintiff does challenge the ALJ's assessment of her mental RFC or the areas of mental functioning, the Court finds such challenge is not properly developed and, thus, fails. *See McGrew v. Duncan*, 937 F.3d 664, 669 (6th Cir. 2019) ("A party may not present a skeletal argument, leaving the court to put flesh on its bones."); *Emerson v. Novartis Pharms. Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) ("[J]udges are not like pigs, hunting for truffles[.]" (citation omitted)).

6

A.   **Standard of Review**

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). The United States Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also McClanahan*, 474 F.3d at 833. Furthermore, the evidence must be "substantial" in light of the record as a whole, "taking into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (citations omitted); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971) (citation omitted). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may

7

not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

  **B.**   **The ALJ's Assessment of Dr. Jolley's Opinion**

To assess a claimant's RFC, ALJs are required to consider all of the relevant evidence in a claimant's record, including the medical opinion evidence. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). Plaintiff filed her application for DIB on September 25, 2018. Accordingly, as both parties acknowledge, the applicable regulation is 20 C.F.R. § 404.1520c.[2]

Subsection (a) of 20 C.F.R.§ 404.1520c provides:

> (a) How we consider medical opinions and prior administrative medical findings. We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. The

---

[2] Applications filed prior to March 27, 2017, were subject to the so-called "treating physician rule," which requires ALJs to "generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." *Blakley v. Comm'r of Soc. Sec.*, 581 F. 3d 399, 406 (6th Cir. 2009). ALJs are no longer required to give special deference to treating physicians, as is reflected in the regulation quoted above.

> most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

The regulations explain that, regarding supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 1520c(c)(1). Regarding consistency, the "more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 1520c(c)(2).

In addition to supportability and consistency, the ALJ is required to consider the source's relationship with the claimant, including the length, frequency, purpose, and extent of the treating relationship, if any; the source's specialization, and other factors, such as the source's familiarity with other evidence in the record and whether the source understands the SSA's policies and evidentiary requirements. *Id.* § 1520c(c). The ALJ is required to explain how they considered supportability and consistency, but not the remaining factors. *Id.* § 1520c(b)(2). If a source offers multiple opinions, the ALJ is not required to articulate their assessment of every single medical opinion; rather, they can articulate how they considered all of that source's opinions "in a single analysis." *Id.* § 1520c(b)(1).

Dr. Jolley is Plaintiff's treating orthopedic surgeon. As mentioned above, the record includes a Medical Source Statement pertaining to Plaintiff's physical impairments/functioning,

9

which Dr. Jolley completed on February 22, 2021, or nearly 1.5 years after Plaintiff's date last insured (Tr. 595-97). Regarding Dr. Jolley's opinion, the ALJ wrote:

> I have considered the opinion of the claimant's orthopedic surgeon, Jay Jolley, M.D., who stated in an opinion dated February 22, 2021, that the claimant had impairments of low back pain, lumbar radiculopathy, failed/symptomatic spinal column stimulator, and was status-post removal of the spinal column stimulator and battery leads as of February 17, 2021. He stated the claimant could not be reasonably expended to attend an eight-hour workday and 40-hour workweek on a consistent basis without missing more than two days per month in view of the claimant's symptoms. Dr. Jolley opined the claimant could sit for a total of two hours in an eight-hour workday and 20 minutes at one time. She could stand for one and one-half hours in an eight-hour workday and for five minutes at one time. She could walk for one and one-[half] hours in an eight-hour workday and for five minutes at one time. The claimant could occasionally lift/carry up to 20 pounds and frequently lift/carry up to 10 pounds. She could never bend and occasionally push and pull. She could continuously use her hands for gross and fine manipulation. The claimant would need to lie down for 60 minutes twice a day due to her symptoms. She would need to take three to four unscheduled breaks for 15-20 minutes during the day. She had no environmental limitations. Dr. Jolley stated the above limitations existed before September 30, 2019 (Exhibit 16F).
>
> I find the opinion of Dr. Jolley (Exhibit 16F) to be unpersuasive. The claimant did not begin going to Dr. Jolley's practice until December 28, 2020, which is about 15 months after the date last insured. During that period, with the exception of two visits in December 2020 with another orthopedic surgeon, Gary Voytik, M.D., who informed the claimant that he was not a spinal surgeon and that manipulation of spinal cord stimulators were outside the extent of his practice (Exhibit 15F). The last orthopedic appointment in the record before the date last insured is March 28, 2019, when the claimant was seeing providers at Centers for Sports Medicine & Orthopaedics. The claimant had her permanent spinal cord stimulator implanted on February 12, 2019, and reported her symptoms returned after a week after the implantation. The claimant reported that she was going to meet with the spinal cord stimulator representative that afternoon for an adjustment. However, there is no record of whether that adjustment was beneficial or of any other treatment for the spine until the claimant went to Dr. Voytik's practice in December 2020 and then to Dr.

> Jolley's practice later in the month. The claimant told Dr. Jolley
> initially that she did not want the spinal cord stimulator removed
> because it did give her relief (Exhibits 11F; 12F; 13F; 14F). I also
> note that while well after the date last insured, Dr. Jolley provided
> his opinion less than a week after he had removed the claimant's
> spinal cord stimulator, so any potential improvement is unknown.
> While Dr. Jolley indicated the claimant's impairments were present
> as of September 2019, since Dr. Jolley did not see her until some 15
> months later, such a statement is not supported by the record.

(Tr. 22).

As discussed above, in addressing Dr. Jolley's opinion, the ALJ is required to explain how he considered the supportability and consistency factors. Plaintiff criticizes the ALJ's reliance on the timing of Dr. Jolley's treatment of Plaintiff and the date of his opinion, and she argues the ALJ "provided no articulation" regarding the supportability and consistency factors [Doc. 12 at Page ID # 657]. On a more substantive level, Plaintiff argues that Dr. Jolley's opinion is supported by his treatment notes and is "highly consistent" with Plaintiff's medical record generally [Doc. 12 at Page ID # 658]. Plaintiff emphasizes the ALJ's error in considering Dr. Jolley's opinion is not harmless, because a sedentary or less-than-sedentary RFC would mean Plaintiff qualified as disabled and would be entitled to benefits.

ALJs are permitted to consider whether evidence is provided after a claimant's date last insured. *See Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849-50 (6th Cir. 2020) (noting that the Sixth Circuit has "repeatedly embraced" the principle that "evidence of a claimant's medical condition after the last insured date is only considered to the extent it illuminates that condition before the expiration of the claimant's insured status" (citation omitted)). Courts continue to apply this rule under the new regulations that apply to consideration of medical opinions. *See Lane v. Comm'r of Soc. Sec.*, No. 3:20-cv-1105, 2021 WL 8342836, at *10-11 (N.D. Ohio May 24, 2021) (applying new regulations and holding: "The ALJ complied with the regulations by explaining that

11

Knoll's opinion was not persuasive because it: (1) was not issued until 15 months after the relevant period; and (2) not consistent with the medical evidence from the relevant period."), report and recommendation adopted, 2023 WL 2733549 (N.D. Ohio Mar. 31, 2023); *Curtis S. v. Comm'r of Soc. Sec.*, No. 22-cv-11799, 2023 WL 3105141, at *6 (E.D. Mich. Apr. 11, 2023) ("Thus, the ALJ did not err by rejecting Dr. Solomon's opinion, as evidence predating the alleged onset date is 'minimally probative' unless it reflects the claimant's limitations during the period at issue." (citation omitted)), report and recommendation adopted, 2023 WL 3098828 (E.D. Mich. Apr. 26, 2023).

The ALJ specifically found: "While Dr. Jolley indicated the claimant's impairments were present as of September 2019, since Dr. Jolley did not see her until some 15 months later, such a statement is not supported by the record." (Tr. 22). The ALJ then went on to describe Plaintiff's medical records from the relevant time period in detail (Tr. 22-25). In particular, when discussing Plaintiff's self-reported symptoms,[3] the ALJ noted:

> The claimant testified that she did not go to a spine doctor for several months[4] because she could not afford the copay. However, the claimant was going to her primary care provider at CHI Memorial Family Practice during that time. The records indicate that the claimant did not report to him back or leg pain as an issue during that time. At an exam on May 23, 2019, the claimant reported she exercised occasionally. On exam, the claimant had no focal motor or sensory deficits (Exhibit 7F). While well after the date last insured, the claimant saw a neurologist, Taylor Bear, M.D., in September 2020, after being told she had a stroke while lying in a tanning bed. The claimant had a normal gait and had normal

---

[3] The ALJ found Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record (Tr. 25). Plaintiff does not directly challenge or address this finding by the ALJ and the Court finds it is supported by substantial evidence in the record.

[4] The ALJ here appears to be referring to the gap between March 2019 and December 2020 (Tr. 40, 472, 591).

12

> sensation to light touch (Exhibit 8F). It is not documented in the record whether the claimant got any relief from a spinal cord adjustment in March 2019 because she quit going to see providers at Centers for Sports Medicine & Orthopaedics. The claimant had previously indicated that she got significant relief with the trial spinal cord stimulator and felt "great." After last going to the Centers for Sports Medicine & Orthopaedics in March 2019 (Exhibit 6F), the claimant next sought treatment for her back on December 21, 2020, when she went to Voytik Center for Orthopedic Care on December 21, 2020. She reported her spinal cord stimulator was moving and compressing on a nerve (Exhibit 15F). The record shows the claimant did not report this issue before the date last insured. The claimant was referred to Dr. Jolley, and she reported the stimulator was working but had an issue of it moving or shifting for the past four to five months, which is after the date last insured. . . . She was taking only Tylenol and ibuprofen and she stated that the stimulator and medication eased her pain. The claimant initially told Dr. Jolley she did not want the device removed because it was beneficial to her (Exhibit 12F). While the claimant testified that she never got any significant relief from the spinal cord stimulator, she did not seek to have it removed until well after the date last insured.

(Tr. 25).

In addition, the ALJ discussed Dr. Jolley's treatment records—the earliest of which are dated nearly 15 months after Plaintiff's date last insured—in a fair amount of detail. The ALJ noted the findings that would seem to detract from his extremely limited functional assessment, a 40% improvement in her symptoms noted in January 2021, Plaintiff's decision to decline a steroid injection, Plaintiff's waffling on removing the stimulator, and essentially normal strength findings (Tr. 23-24). The ALJ also noted the findings that would seem to support Dr. Jolley's extremely limited functional assessment, including lower extremity pain, a later significant worsening of her pain to 10 out 10, and an extremely antalgic gait (Tr. 23-24).

As to consistency, in addition to the evidence in the quoted passages discussed above, the ALJ noted that in December 2020, when Plaintiff sought help for her spinal issues for the first time

13

since March 2019, P.A. Brandon West examined Plaintiff and found all of Plaintiff's extremities showed good muscle tone and strength, with no muscle atrophy or wasting (Tr. 23). The ALJ also found the opinions of the non-examining State Agency doctors persuasive, noting they assigned a limited range of light exertional level work (Tr. 24).

The foregoing discussion demonstrates the ALJ did, in fact, consider the supportability of Dr. Jolley's opinion. The Court finds it was reasonable for the ALJ to focus on the supportability/consistency of Dr. Jolley's particular finding that Plaintiff's functional abilities as he observed them in February 2021, after two months of treatment, existed prior to September 30, 2019. The Court further observes Dr. Jolley did not list any particular evidence to support his statement that Plaintiff's condition in February 2021 existed prior to September 30, 2019. He simply circled "yes" in response to the following question which was printed on the form: "Your patient is only insured for Title II benefits through __9/30/2019__. Based upon your treatment and medical expertise, combined with your patient and impairment familiarity, have the above limitations existed since prior to __9/30/2019__?" (Tr. 597).

"Although the ALJ did not use the words 'supportability' and 'consistency' in the decision, this omission does not necessarily mean that the ALJ did not consider these factors." *Cormany v. Kijakazi*, No. 5:21CV933, 2022 WL 4115232, at *5 (N.D. Ohio Sept. 9, 2022); *see also Oliver v. Kijakazi*, No. 3:22-CV-28-DCP, 2023 WL 2587487, at *7 (E.D. Tenn. Mar. 21, 2023) ("In this case, while the ALJ did not explicitly use the word 'supportability,' she did analyze whether Dr. Goewey's limitations were supported by, or grounded in, his examination findings."). Instead, as the foregoing discussion reveals, the ALJ fulfilled her obligation under the regulations by citing to substantial evidence that showed significant differences between Dr. Jolley's opinion and the rest of the medical record, in particular Dr. Jolley's opinion that Plaintiff condition in February 2021

14

dated back to September 30, 2019.  *See Lane*, 2021 WL 8342836, at *11 ("The ALJ complied with the regulations by explaining that Knoll's opinion was not persuasive because it: (1) was not issued until 15 months after the relevant period; and (2) not consistent with the medical evidence from the relevant period.").  After all, even if Dr. Jolley's treatment notes from late 2020 and early 2021 support his opinion that Plaintiff was as functionally limited as he described in his February 2021 opinion, this would not necessarily address the question of Plaintiff's functional limitations prior to September 30, 2019.

Plaintiff cites to evidence from Dr. Jolley's exams and a December 2020 x-ray, but she does not address how such evidence supports Dr. Jolley's opinion that Plaintiff's limitations existed prior to September 30, 2019.  Moreover, while the ALJ did not specifically discuss the x-ray or certain specific findings from Plaintiff's December 2020 and January 2021 appointments with Dr. Jolley, the ALJ discussed these appointments, including positive and negative findings by Dr. Jolley, as set forth above.  The ALJ did not overlook the evidence resulting from these appointments.

Plaintiff also complains the ALJ "did not even mention the limitations determined by Dr. Richardson," referring to treatment notes from February 15, 2019, instructing Plaintiff: "No lifting greater than a gallon of milk or lifting at the waist" (Tr. 489).  But the ALJ did, in fact reference these exact instructions, noting they came a February 15, 2019, appointment (Tr. 23).  Regardless, the ALJ is "not required to discuss all of the relevant evidence in the record," so long as they consider the evidence as a whole "and reach a reasoned conclusion."  *Ricci v. Berryhill*, No. 3:16-CV-651-HBG, 2017 WL 5985801, at *5 (E.D. Tenn. Dec. 1, 2017) (quoting *Dycus v. Astrue*, No. 3:12-CV-78, 2012 WL 4215829, at *7 (E.D. Tenn. Aug. 30, 2012), *adopted*, 2012 WL 4172138

(E.D. Tenn. Sept. 18, 2012)); *Boseley v. Comm'r of Soc. Sec.*, 397 F. App'x 195, 199 (6th Cir. 2010)).

The ALJ's decision in this case demonstrates that the ALJ adequately considered the factors of supportability and consistency in evaluating Dr. Jolley's opinion in the context of the record as a whole, and ultimately reached a reasoned conclusion regarding Plaintiff's RFC. The ALJ's articulation is sufficient to allow the Court to review the ALJ's evaluation of these factors and to determine that the ALJ's evaluation and decision is supported by substantial evidence. The decision reflects a "logical bridge between the evidence and the conclusion that the claimant is not disabled." *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260, at *3 (E.D. Tenn. July 19, 2010) (citation omitted).

Because the ALJ had "the enormous task of making sense of the record, reconciling conflicting medical opinions and evidence, and weighing the credibility of [Plaintiff's] subjective complaints," this Court's review is limited to whether the ALJ relied on evidence that "a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Comm'r of Soc. Sec.*, No. 21-1384, 2022 WL 740692, at *2 (6th Cir. Jan. 4, 2022) (quoting *Biestek*, 139 S. Ct. at 1154). In assessing Plaintiff's RFC, the ALJ explained the evidence that supported her conclusion and why she considered certain evidence less persuasive, and the Court finds the ALJ's findings and conclusions are adequately supported. Plaintiff cites to evidence in the record to support her position, but that is insufficient given the standard of review. *See Schmiedebusch*, 536 F. App'x at 646 ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion . . . ." (citation omitted).

V. **CONCLUSION**

For the foregoing reasons, it is **ORDERED** that:

16

(1) Plaintiff's motion for summary judgment [Doc. 11] is **DENIED**;

(2) the Commissioner's motion for summary judgment [Doc. 14] is **GRANTED**; and

(3) the Commissioner's decision denying benefits is **AFFIRMED**.

SO ORDERED.

ENTER:

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE